UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
LUZ DEL CARMEN ROJAS,

               Plaintiff,                       **MEMORANDUM AND ORDER**
                                                           15-CV-1080 (RRM)

        -against-

COMMISSIONER OF SOCIAL SECUIRTY,

               Defendant.
----------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Luz Del Carmen Rojas ("Rojas") brings this action against defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"), pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Rojas seeks review of the determination of an administrative law judge (ALJ) that she is not entitled to Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act. The Commissioner has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Def.'s Mem. (Doc. No. 16).) Rojas did not file an opposition to the Commissioner's motion to dismiss. (*See* 4/22/2016 Order.) For the reasons set forth below, the Commissioner's motion to dismiss is granted.

## BACKGROUND

### I.    Procedural History

      Rojas filed an application for SSI on November 1, 2011, alleging disability beginning October 10, 2007, due to depression, insomnia, gastritis, anxiety, and hernia. (Admin. R. at 135-40, 175.) This application was denied, and Rojas requested a hearing before an ALJ. (*Id.* at 70, 71-74.) ALJ Jay L. Cohen held hearings on December 6, 2012 and September 4, 2013. Rojas testified at the September 4, 2013 hearing. (*Id.* at 25-69.) While Rojas was not accompanied by an attorney, she was represented at the hearings by Accredited Disability Representative Dale

Masur ("Masur"). (*Id.*) On September 13, 2013, ALJ Cohen issued a decision that Rojas was not disabled for purposes of Social Security benefits. (*Id.* at 6–24.) On January 7, 2015, the Social Security Appeals Council denied review. Rojas subsequently appealed to this Court.

## II. Administrative Record

Rojas was born in 1968 (*id.* at 135) and lives with her children, ages 15 and 21. (*Id.* at 54-55.) She completed school through the eighth grade in Santo Domingo, (*id.* at 55, 176) and came to the United States in 1992. (*Id.* at 280). She can speak, read, and understand English. (*Id.* at 174.) Rojas reported that she last worked sixteen years ago, and stopped working when she became pregnant. (*Id.* at 280-84.)

In November, 2011, a Social Security Administration employee interviewed Rojas and noted that she showed no signs of a mental problem. (*Id* at 147-49). The administrative record reflects otherwise. In an August 9, 2011 letter, Safe Horizon, a victim assistance program, noted that Rojas was a victim of domestic violence, and Safe Horizon had been providing her with services since October 2007. (*Id.* at 312.) Specifically, Rojas was a victim of sexual and physical abuse in 2007. (*Id.* at 280.) Rojas' anxiety reportedly began around the time of her abuse. (*Id.* at 162.)

In the disability report filed with her November 2011 Social Security application, Rojas reported that she saw Albert Benchabbat, M.D., an internist, in 2007 and 2008 for anxiety. (*Id.* at 178.) She received further mental health treatment at Jamaica Hospital's Brady Institute on May 31, 2011 and was prescribed Elavil for anxiety, Zoloft for depression, and Zolpidem for insomnia. (*Id.* at 177, 180.) Rojas testified that she has trouble sleeping, and experiences several panic attacks per week, each of which lasts up to an hour. (*Id.* at 55, 63, 162, 163.) Rojas reported that she sees her psychiatrist, Fermin Gonzalez, M.D., every 27 days, and he prescribes

Zoloft, which "helps a little." (*Id.*) Rojas stated that even with medication she cannot be around groups of people. (*Id.* at 55)

In addition to her mental health problems, Rojas stated that she sees a gastroenterologist, Yashpal Arya, M.D, for her "bad stomach." (*Id.* at 179, 181.) Rojas' internist, Fortunato DiFranco, prescribed her Nexium for her stomach and Pravastatin for high cholesterol. (*Id.* at 177, 59-60.) Rojas also indicated that she was hospitalized in 2004 for removal of a mass in her left breast. (*Id.* at 307.) Separately, Rojas experiences headaches, vertigo, back pain, and knee pain. (*Id.* at 57-58.) As a consequence, Rojas cannot do heavy-lifting, and reported that she becomes tired if she sits, stands, or walks for too long. (*Id.* at 159-61.) Rojas stated that she cannot walk up steep stairs. (*Id.*) However, she generally does not use a cane, walker, or wheelchair, and can kneel, squat, reach with her hands, see, hear, and talk. (*Id.*) Rojas reported that she can dress, bathe, and groom herself. (*Id.* at 283.) She can cook her own meals, do her own laundry, take public transportation, and engage in cleaning, shopping, and managing money. *(Id.)*

      a.      **Medical Evidence Prior to Rojas' November 1, 2011 SSI Application**

In 2009, Rojas was treated at Jamaica Hospital Medical Center for neck pain (*id.* at 724-41) and hypertension with a headache. (*Id.* at 742-57.) On June 9, 2010, an upper gastrointestinal endoscopy revealed a hiatal hernia and acute gastritis, (*id.* at 217, 225, 322) and a pathology report showed antral gastric mucosa with mild chronic inflammation, marked foveolar hyperplasia, and lymphoid aggregate. (*Id*. 219.) The report also indicated oxyntic gastric mucosa with mild chronic inflammation, but was negative for H. Pylori. (*Id*.) An abdominal ultrasound performed on December 28, 2010 was normal. (*Id.* at 220.)

On May 16, 2011, Rojas went to Jamaica Hospital's emergency department complaining of right foot pain from tripping on an escalator two weeks earlier. (*Id.* at 758-71.) Results of a systems review, including neurological, gastrointestinal, and psychological systems, were negative. (*Id.* at 759.) On examination, her right foot was swollen, and X-rays revealed soft tissue swelling but no fracture. (*Id.* at 760, 802-03.)

Rojas went to Jamaica Hospital's emergency department a second time on May 27, 2011, complaining of insomnia. (*Id.* at 773.) Results of a systems review were negative, and stomach, musculoskeletal, neck, and neurological examinations were normal. (*Id.* at 772-80.) Upon examination, Rojas appeared oriented. (*Id.*) Rojas was prescribed Ambien for her insomnia. (*Id.* at 780.)

Rojas went to Jamaica Hospital's emergency department a third time on May 31, 2011, complaining of depression, insomnia, and fear of her ex-boyfriend. (*Id.* at 782, 785, 792.) A mental status examination revealed that Rojas' appearance, attitude, psychomotor activity, memory, attention and concentration, abstraction, judgment, speech, and thought processes were normal. (*Id.* at Tr. 796.) Her intellectual functioning was assessed as "average." (*Id.*) As a victim of domestic violence, Rojas expressed concern that her ex-boyfriend was following her. (*Id.*) She was discharged with a diagnosis of mood disorder not otherwise specified (NOS) and post-traumatic stress disorder (PTSD). (*Id.* at 314.)

On August 4, 2011, Rojas spoke on the phone with her psychiatrist, Dr. Fermin P. Gonzalez. Rojas reported a history of depression and anxiety, and Dr. Gonzalez diagnosed "major depressive disorder, single episode, unspecified." (*Id.* at 387-88.)

On August 5, 2011, a psychiatric assessment revealed retardation in her psychomotor activity, normal speech, a dysthymic mood, normal and full-range affect, and intact thought

4

processes.  (*Id*. at 396.)  She had no delusions, hallucinations, or suicidal ideations.  (*Id*.)  Her memory, abstraction, insight, judgment, and impulse control were intact.  (*Id.*)  Her concentration was "mildly impaired" and her general knowledge was "adequate."  (*Id.*)  Dr. Gonzalez diagnosed recurrent major depression and recommended both psychotherapy and monthly medication management.  (*Id.*)

Dr. Gonzalez saw Rojas again on September 1 and 29, 2011.  (*Id.* at 408-33.)  On both days, Rojas had normal mood, thought process, and thought content, and she experienced no adverse side effects from taking Nexium, Zoloft, and Ambien.  (*Id.* at 409, 423.)  The diagnosis remained recurrent major depression.  (*Id.*)  After examining Rojas again on October 27, 2011, Dr. Gonzalez found that she was improved on the medication.  (*Id.*)

### b. Medical Evidence After Rojas' November 1, 2011 SSI Application

On November 14, 2011, Rojas saw Dr. Gonzalez's colleague, Lober Cervantes, M.D. (*Id.* at 448-62.)  Rojas reported no problems other than her insomnia.  (*Id.* at 451.)  On mental status examination, her behavior, speech, affect, thought processes and content, cognition, insight, judgment, and mood were normal.  (*Id*.)  Dr. Cervantes diagnosed recurrent major depression, prescribed Trazodone to replace Ambien for sleeping, and continued Zoloft.  (*Id.* at 453.)

On November 15, 2011, an esophagogastroduodenoscopy revealed moderate gastritis, an esophageal nodular lesion, and an antral lesion.  (*Id.* at 358-59.)  The biopsy was negative for inflammation, intestinal metaplasia, H-Pylori, and fungi.  (*Id.* at 317-18.)

On November 25, 2011 (*id.* at 463-77), Dr. Gonzalez's mental status examination yielded normal findings in behavior, mood, speech, thought process, thought content, and cognition.  (*Id.* at 466.)  As there were no side effects and examination findings were identical to the December

5

15, 2011, results, Zoloft and Trazodone were continued. (*Id.* at 481) A thyroid ultrasound performed on January 3, 2012, showed a right-sided nodule. (*Id.* at 319-20.)

On January 5, 2012, Jennifer Kyle, Ph.D., examined Rojas. (*Id.* at 280.) Dr. Kyle found Rojas' affect restricted and anxious, mood dysthymic, intellectual functioning limited, memory skills and concentration mildly impaired, cognitive functioning below average, and judgment and insight fair. (*Id.* at 280, 283.) Rojas was fully oriented. (*Id.*) Dr. Kyle diagnosed major depressive disorder without psychotic features, and chronic PTSD. (*Id.* at 283.) She opined that Rojas could follow and understand simple directions and instructions, learn new tasks, and make appropriate decisions. (*Id*.) Rojas had a mild impairment in performing simple tasks independently. (*Id.*) She had moderate impairments in her ability to maintain concentration, keep a regular schedule, learn new tasks, perform complex tasks independently, and make appropriate decisions. (*Id.*) Dr. Kyle found that Rojas had marked impairments in relating adequately with others and dealing appropriately with stress. (*Id.*)

On January 12, 2012, Dr. Gonzalez's mental status examination yielded normal findings in behavior, mood, speech, thought process, thought content, and cognition. (*Id.* at 496.) The diagnosis remained recurring major depression, for which Zoloft and Trazodone were continued without side effects. (*Id*.) All of Dr. Gonzalez's findings were identical to those of the February 9 and March 8, 2012 examinations. (*Id.*)

On January 27, 2012, a state agency psychiatrist, Dr. J. Kessel, reviewed the evidence of record. (*Id.* at 286-99, 300-03.) Dr. Kessel assessed that while Rojas had mild restrictions in activities of daily living, social functioning, and concentration, her impairments of anxiety and depression fell short of the Social Security criteria for disability. (*Id.* at 289, 291, 297.) S*ee* 20 C.F.R. Part 404, Subpart P, Appendix 1. Through a Mental Residual Functional Capacity

Assessment, Dr. Kessel assessed that Rojas was not significantly limited in her ability to remember locations and work-like procedures, understand and carry out very short and simple instructions, maintain attention for extended periods, perform activities within a schedule, ask appropriate questions, maintain appropriate social behavior, work in proximity to others, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform without an unreasonable number of rest periods. (*Id.* at 300-01.)

On February 10, 2012, Joyce Graber, M.D., a family practitioner, examined Rojas. (*Id.* at 307-11.) Rojas said she had been suffering from fibroids for a few years, gastritis and hiatal hernia for five years, high cholesterol for one year, a benign thyroid nodule for one month, and left ankle pain for one month. (*Id.*) Upon examination, Dr. Graber noted that Rojas appeared to be in no acute, physical distress. (*Id.* at 308.) Dr. Graber opined that Rojas had mild limitations in bending, squatting, walking, and other similar activities. (*Id.* at 310.)

On March 30, 2012, Rojas went to the emergency room at Jamaica Hospital complaining of high blood pressure and a headache of two hours' duration. (*Id.* at 539.) Ngozi Udeh, M.D., examined Rojas and found all systems operating normally. (*Id.* at 541.)

On April 5, 2012, Dr. Gonzalez performed another mental status examination. (*Id.* at 575-78.) The examination yielded normal findings in behavior, mood, speech, thought process, thought content, and cognition. (*Id.*) Dr. Gonzalez's diagnosis remained recurring major depression. Due to Rojas's relative stability and lack of side effects on the medications, Zoloft and Trazodone were continued. (*Id.*) Dr. Gonzalez also opined that Rojas had moderate to marked limitations in carrying out instructions, making simple judgments, responding appropriately to work pressures, and working with others. (*Id.* at 328-30.) Rojas exhibited an extreme limitation in working appropriately with supervisors. (*Id.*)

7

On April 12, 2012, Dr. DiFranco, Rojas' internist, completed a form assessment. (*Id.* at 324-27.) Dr. DiFranco noted that Rojas experienced dizziness, vertigo, fatigue, weakness, back pain, bilateral knee pain, and bilateral ankle pain. (*Id.*) As a consequence, Rojas was limited in working around temperature extremes, noise, dust, vibration, humidity, fumes, odors, chemicals, and gases. (*Id.*) In Dr. DiFranco's assessment, Rojas could lift or carry less than 10 pounds, stand for two hours, and sit for six hours over the course of an eight-hour workday. (*Id.*) Her ability to push or pull with her upper and lower extremities was limited. (*Id.*) Dr. Difranco further opined that Rojas could occasionally climb, balance, kneel, crouch, crawl, and stoop. (*Id.*)

On April 17, 2012, a colonoscopy detected hemorrhoids and diverticulosis. (*Id.* at 331-32, 360.) In a May 4, 2012, mental status examination, Dr. Gonzalez assessed Rojas' behavior, mood, speech, thought process, thought content, and cognition as normal. (*Id.* at 592.) Dr. Gonzalez's diagnosis remained recurring major depression for which he continued to proscribe Zoloft and Trazodone with no side effects. At their next meeting on June 1, 2012, Dr. Gonzalez's assessment was essentially the same. (*Id.* at 604-19).

On October 19, 2012, Grisco Blanco, M.D., Dr. Gonzalez's colleague at Jamaica Hospital, examined Rojas. (*Id.* at 683-703.) According to the health screening, she had no acute physical medical problems. (*Id.*) Per Dr. Blanco's medical examination, Rojas' attention and remote memory were good. (*Id.*) Her concentration, recent memory, and judgment were fair. (*Id.*) Her affect was normal and she had no apparent thought or perceptual disorder. (*Id.* at 686.) That same day, Rojas also met with Alberto Palomino, a social worker. She informed Palomino that she was having trouble sleeping, and her medications were not working. (*Id.* at 694.)

8

On November 12, 2012, Dr. DiFranco completed another form assessment. (*Id.* at 333-36.) Dr. DiFranco opined that in an eight-hour workday, Rojas could lift or carry less than ten pounds, stand less than two hours, and sit less than six hours. (*Id.*) Dr. DiFranco noted that Rojas "complains of headaches, dizziness, dizzy spells, [and] vertigo. She uses a cane for balance." (*Id.*) Dr. DiFranco noted that Rojas could occasionally climb, balance, kneel, crouch, crawl, and stoop. (*Id.*) She was limited to occasional reaching, handling, fingering, and feeling. (*Id.*) She was also limited in seeing, hearing, and speaking due to vertigo. (*Id.*) However, Rojas no longer had environmental limitations regarding temperature extremes, noise, dust, vibration, humidity, fumes, odors, and chemicals. (*Id.*)

Dr. Gonzalez performed another mental status examination on November 16, 2012. (*Id.* at 704-23.) He found the following to be normal: behavior, speech, mood, affect, thought process, thought content, sensorium, and cognition. (*Id.*) Insight and judgment were fair. (*Id.*) Dr. Gonzalez's diagnosis and prescriptions remained the same. (*Id.*) He opined that Rojas had moderate limitations in understanding, remembering, and carrying out instructions. (*Id.*) He further opined that she had a marked limitation in the ability to make judgments on simple work-related decisions, and in interacting appropriately with others. (*Id.*) Dr. Gonzalez indicated that Rojas was disoriented in time. (*Id.* at 357.) That same day, Rojas met again with the social worker, Palomino. He noted that she seemed shy and guarded in group session. (*Id.* at 714.) Rojas reported that she had frequent nightmares and felt anxious most of the time. (*Id.*)

On January 29, 2013, a thyroid ultrasound showed an enlarged thyroid gland and a 3.1cm complex right thyroid lobe nodule, which previously measured 2.9cm. The nodule had been biopsied and found benign in January 2012. (*Id.* at 825.)

    c. **Medical Expert Interrogatories and Testimony**

On March 11, 2013, after reviewing Rojas' mental health records, Jennifer Blitz, Psy.D., responded to the ALJ's written interrogatories (*id.* at 816-17) and completed a medical source statement covering May 31, 2011 to March 11, 2013 on Rojas' ability to do mental work-related activities. (*Id.* at 818-20.) Dr. Blitz stated that Rojas' major depressive disorder and PTSD constituted severe impairments, but they did not meet the criteria of an impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 816.) Dr. Blitz opined that Rojas could perform only simple, routine tasks in a low stress environment. (*Id.* at 818-820.) Rojas required limited contact with supervisors, co-workers, and the public. (*Id.*) Dr. Blitz found that Rojas had mild limitations in understanding and remembering simple instructions, and making judgments on simple work-related decisions. (*Id.*) She found that Rojas had moderate limitations in understanding, remembering, and carrying out complex instructions and decisions. (*Id.*) She also found that Rojas had a marked limitation in interacting appropriately with the public. (*Id.*)

Dr. Blitz commented that one of Dr. Gonzalez's opinion statements was not supported by treatment records. (*Id.* at 818, 29, 34, 35, 37, 39.) At the September 4, 2013 hearing, Dr. Blitz testified that she disagreed with Dr. Gonzalez's opinion that, due to her difficulty concentrating, Rojas had marked restrictions in understanding and remembering instructions for work-related mental activities. (*Id.* at 29, 34, 35, 37, 39, 328.) Dr. Blitz opined that the treatment notes from Jamaica Hospital Center did not reflect poor concentration. (*Id.* at. 30.) Specifically, on August 4, 2011, Dr. Gonzalez noted only mildly decreased concentration, and mental status evaluations were normal for attention, concentration, and memory. (*Id.* at 30, 35, 392.) On May 31, 2011, Dr. Gonzalez found that attention and concentration were intact. (*Id.* at 30.)

For the same reasons, Dr. Blitz said she disagreed with Dr. Gonzalez's mental health assessment regarding Rojas' ability to understand and remember work-related instructions and make work-related judgments (*id.* at 328) because his treatment notes did not support his conclusions. (*Id.* at 39.) Rather, Dr. Blitz testified that one of Dr. Gonzalez's other assessments (*id.* at 355), which noted only moderate restrictions in understanding and remembering instructions, was more consistent with the treatment records. (*Id.* at 29.) In addition, Dr. Blitz did not credit the opinion of psychiatric consultant Dr. Kyle because Dr. Blitz believed treating physicians provide the most reliable information regarding a person's functional limitations. (*Id.* at 38-40.)

### d. Vocational Expert Testimony

Amy Leopold testified as a vocational expert (VE) at the hearing held on September 4, 2013. (*Id.* at 44-48, 108.) The ALJ detailed Rojas' vocational characteristics and purported limitations. (*Id.* at 45.) Leopold testified that an individual with Rojas' limitations could perform at least the following medium unskilled work[1]: kitchen helper (DOT No. 318.687-010), with 16,000 jobs regionally and 500,000 jobs nationally; packager (DOT No.920.587-018), with 19,000 jobs regionally and 660,000 jobs nationally; and laundry worker (DOT No. 361.685-018), with 8,500 jobs regionally and 198,000 jobs nationally.[2] (*Id.* at 46-47.)

## STANDARD OF REVIEW

### I. Review of Denial of Social Security Benefits

The Court does not make an independent determination about whether a claimant is disabled when reviewing the final determination of the Commissioner. *See Schaal v. Apfel*, 134

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 416.967(c).
[2] The "DOT" numbers refer to the occupation code in the U.S. Department of Labor, Dictionary of Occupational Titles (4th ed., rev'd 1991).

F.3d 496, 501 (2d Cir. 1998). Rather, the Court "may set aside the Commissioner's determination that a claimant is not disabled only if the [ALJ's] factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." (*Id.*) (internal quotation marks omitted). "If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld." *Stemmerman v. Colvin*, No. 13-CV-241 (SLT), 2014 WL 4161964, at *6 (E.D.N.Y. Aug. 19, 2014) (citing 42 U.S.C. § 405(g)). "This deferential standard of review does not apply, however, to the ALJ's legal conclusions." *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 342 (E.D.N.Y. 2010). Rather, "[w]here an error of law has been made that might have affected the disposition of the case . . . [an ALJ's] failure to apply the correct legal standards is grounds for reversal." (*Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).)

## II. Eligibility Standard for Supplemental Security Income

To qualify for SSI benefits, an individual must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). This requires a five-step analysis for determining whether a claimant is disabled:

> [1] First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> [2] If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.
>
> [3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him *per se* disabled.
>
> [4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.
>
> [5] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof for the first four steps of the analysis, but the burden shifts to the Commissioner for the fifth step. *See Talavera*, 697 F.3d at 151.

## DISCUSSION

ALJ Cohen followed the required five-step legal analysis, and substantial evidence in the record supports his determination that Rojas did not qualify for Social Security benefits. Therefore, the Court must affirm the ALJ's decision.

**I.      The ALJ Properly Followed the Five-Step Analysis**

First, ALJ Cohen determined that Rojas satisfied step one, because she had not engaged in substantial gainful activity since her November 1, 2011 SSI application date. (Admin. R. at 14.)

At step two, ALJ Cohen found that Rojas satisfied the "severe impairment condition" through her major depressive disorder, PTSD, hiatal hernia, diverticulosis, and gastritis. (*Id*.) The ALJ also found that vertigo did not constitute a severe impairment.[3] (*Id*.)

At step three, the ALJ must determine the petitioner's residual functional capacity (RFC), which is the most she can do despite her impairments. 20 C.F.R. §§ 416.920(a)(4), 416.920(e), 416.945(a). ALJ Cohen determined that Rojas' severe impairments did not meet the criteria of an impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 14-15.) Specifically, he found that Rojas had the RFC to perform less than the full range of medium work, which involves lifting no more than 50 pounds at a time or carrying of objects weighing up to 25 pounds. (Admin. R. at 15.) *See* 20 C.F.R. § 416.967(c). Specifically, ALJ Cohen found that Rojas could engage in frequent, but not constant, bending or squatting; simple, routine work free from discretionary decisions, conflict situations, and production rate quotas; and occasional contact with supervisors and co-workers free from contact with the public. (Admin. R. at 15.)

At step four, ALJ Cohen concluded that Rojas had no past relevant work. (*Id.* at 18.)

At step five, ALJ Cohen considered Rojas' age, education, RFC, and the vocational expert's testimony, and found that there were jobs that existed in significant numbers in the

---

[3] Rojas did not list vertigo among the impairments on her SSI application. (*Id.* at 175.) While Dr. DiFranco indicated that Rojas suffered from vertigo (*id.* at 325-26, 334-35) the ALJ noted that Rojas was not seeing a neurologist, and the hospital records did not reflect any complaints or treatment for vertigo (*see*, *e.g.*, *id.* at 541, 759, 773.), nor did Rojas mention vertigo to Dr. Graber, the medical consultant. (*Id.* at 307.) The ALJ is empowered to resolve conflicts in the evidence. (*See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).) Here, substantial evidence in the record supports ALJ Cohen's determination that Rojas did not meet her statutory burden under 20 C.F.R. § 416.912(a).

14

national economy that she could perform despite her impairments. (*Id.* at 18-19.) Accordingly, the ALJ found that the Commissioner had carried her statutory burden. (*Id.* at 19.)

II.     **Substantial Evidence Supports the ALJ's RFC**

The RFC is assessed based on all the relevant medical and other evidence of record, and it takes into consideration the limiting effects of all impairments. 20 C.F.R. § 416.945(a)(2)–(3). The ALJ is responsible for deciding a claimant's RFC and, in making that determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. *See* 20 C.F.R. §§ 416.927(d), 416.945(a)(3), 416.946(c). Rojas had the burden of presenting evidence that she was incapable of performing substantial gainful activity. 42 U.S.C. § 23(d)(5)(A) (applicable to SSI through 42 U.S.C. § 1382c(a)(3)(H)(i)); 20 C.F.R. §§ 416.912(c), 416.945(a)(3); 68 Fed. Reg. 51153, 51155 (August 26, 2003); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so."). Accordingly, Rojas was required to demonstrate the existence of a severe impairment or impairments that result in an RFC that prevented her from performing substantial gainful activity. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Furthermore, it is for the ALJ to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal*, 134 F.3d at 504 ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record."). Here, the record reflects that the ALJ properly exercised his discretion in resolving the evidentiary conflicts in the record and assessed an RFC that is supported by substantial evidence. *See Veino*, 312 F.3d at 588. When a medical opinion is inconsistent with other evidence, the ALJ is not required to afford deference

15

to that opinion and may use his discretion in weighing the medical evidence as a whole. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

Here, substantial evidence supports the ALJ's physical RFC finding that Rojas could perform a range of medium work despite having a hiatal hernia, diverticulosis, and gastritis. For example, her physical examinations at Jamaica Hospital consistently yielded normal findings. (*See, e.g.*, Admin. R. at 541, 759, 780.)

In making that determination, ALJ Cohen gave greater weight to the opinion of Dr. Graber, the consultative medical examiner, than the opinion of Dr. DiFranco. (*Id.* at 16-17.) Dr. Graber examined Rojas and opined that she had only mild limitations in bending, squatting, walking, and other such activities. (*Id.* at 310.) This factored directly into the RFC finding that Rojas could engage in frequent, but not constant, bending or squatting. (*Id.* at 18.) The ALJ declined to afford great weight to Dr. DiFranco's opinion that Rojas could not perform sedentary work. (*Id.* at 16, 324-27, 333-36.) Rather, the treatment notes in the record showed normal or mild physical limitations, consistent with an ability to perform a range of medium work. (*See, e.g.*, *Id.* at 540, 541, 686, 759, 780.) To the extent that the record contains conflicting testimony on Rojas' physical ability to work, ALJ Cohen was entitled to credit Dr. Graber's opinion over Dr. DiFranco's, and the record contains substantial evidence sufficient to sustain that determination. (Admin. R. at 541, 759, 780.) *See Veino*, 312 F.3d at 588.

Similarly, substantial evidence supports the ALJ's mental health RFC which found Rojas limited to simple, routine work, with an inability to appropriately handle discretionary decisions, conflict situations, production rate quotas, or frequent contact with supervisors, co-workers, and the public. (*Id.* at 15) In making that determination, ALJ Cohen gave greater weight to Rojas' psychiatrist Dr. Gonzalez, than the expert witness Dr. Blitz. (*Id.* at 15-17.) As the ALJ noted,

16

and Dr. Blitz confirmed (*see id.* at 29, 34, 35, 37; 39), Dr. Blitz and Dr. Gonzalez gave contradictory assessments, made six months apart, of Rojas' mental limitations. (*Id.*) ALJ Cohen credited Dr. Gonzalez, who found only moderate mental work-related limitations. (*Id.* at 355.) ALJ Cohen noted, and Dr. Blitz concurred (*id.* at 30, 39, 818), that the more restrictive limitations were not consistent with Dr. Gonzalez's extensive treatment notes. (*Id.* at 17.) ALJ Cohen was entitled to give great weight to the substance of those treatment notes. *See e.g.*, *Legg v. Colvin*, 574 Fed.Appx. 48, 49 (2d Cir. 2014); *Cichocki v. Astrue*, 534 Fed.Appx. 71 at *75 (2d Cir. 2013). The treatment notes provide "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted). As such, substantial evidence in the record supports ALJ Cohen's mental health RFC determination.

## III. Substantial Evidence Supports the ALJ's Credibility Determination

A credibility finding by an ALJ is entitled to deference by a reviewing court "because [the ALJ] heard plaintiff's testimony and observed [plaintiff's] demeanor." *Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995). The ALJ must analyze the credibility of a claimant as to her symptoms through a two-step test. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must first decide "whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Id.* (citing 20 C.F.R. § 404.1529(b)). Next, if the ALJ determines that the claimant does have such an impairment, he must consider "'the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." *Id.* (quoting 20 C.F.R. § 404.1529(a) (alternations omitted)). When evaluating the "intensity, persistence and limiting effects of symptoms, the Commissioner's regulations require

17

consideration of seven specific, *objective* factors . . . that naturally support or impugn *subjective* testimony of disabling pain and other symptoms." *Dillingham v. Colvin*, No. 14-CV-105 (ESH), 2015 WL 1013812, at *5 (N.D.N.Y. Mar. 6, 2015). These seven objective factors are:

> (i) [the] claimant's daily activities; (ii) [the] location, duration[,] frequency, and intensity of [the] claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) [the] type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate [the claimant's] pain or other symptoms; (v) treatment, other than medication, [the] claimant receives or has received for relief of her pain or other symptoms; (vi) measures [the] claimant uses or has used to relieve pain or other symptoms; and (vii) other factors concerning [the] claimant's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *5 n.22 (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)). "While it is 'not sufficient for the ALJ to make a single, conclusory statement that' the claimant is not credible or simply recite the relevant factors, remand is not required where 'the evidence of record permits [the Court] to glean the rationale of the ALJ's [credibility] decision.'" *Cichocki v. Astrue*, 534 F. App'x. 71, 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). In such a case, "the ALJ's failure to discuss those factors not relevant to [her] credibility determination does not require remand." *Id.*

Here, ALJ Cohen followed the two-step process in considering Rojas' symptoms. (Admin. R. at 16-18.) First, he determined that Rojas did have medically determinable impairments that could reasonably be expected to cause the relevant symptoms. (*Id.*) However, at step two, ALJ Cohen found that Rojas' statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (*Id.*) ALJ Cohen noted that Rojas had reported engaging in a wide range of activities. For example, Rojas shopped, cleaned, cooked, and did laundry on a daily basis and did not require assistance in these activities. (Admin. R. at 155, 283, 387.) Rojas performed her own personal care, went out alone, traveled

18

by foot or by bus, and paid her bills. (*Id.* at 155-59.) Other clear inconsistencies impugned Rojas' credibility. For instance, Rojas came to the hearing with a cane (*id.* at 56) but did not bring one to any of the consultative examinations (*id.* at 282, 308), and, in her disability report, she denied requiring a cane or any assistive device. (*Id.* at 161.) In addition, while Rojas had consistently reported that she took the bus alone (*see id.* at 157, 163, 283, 308), she testified that she always had to have a family member with her on the bus because of her mental confusion. (*Id.* at 62.) Due in part to these inconsistencies, ALJ Cohen found that although Rojas' impairments produced some symptoms, her testimony regarding their severity was not entirely credible. (*Id.* at 17-18.) As such, Rojas' inconsistencies, and the extensive medical evidence, provide substantial evidence for ALJ Cohen's credibility determination. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence."); *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

IV. **Substantial Evidence Supports The ALJ's Finding That Rojas Was Capable of Performing A Significant Number of Jobs in The National Economy**

At step five of the disability analysis, the ALJ must consult the applicable Medical Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). However, where, as here, a claimant has both exertional and nonexertional impairments, the ALJ is entitled to rely on the opinion of a vocational expert. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983). An ALJ may rely on a vocational expert to determine whether there is work that exists in significant numbers in the national economy that a claimant could perform given her vocational factors and RFC. *Id.* Here, ALJ Cohen relied on the testimony of the vocational expert, Amy Leopold, to whom he posed hypothetical questions based on his RFC findings with respect to Rojas' exertional and non-

exertional limitations. (Admin. R. at. at 44-48). The vocational expert opined that an individual with Rojas' impairments could perform a variety of jobs, including kitchen helper, packager, laundry worker, and housekeeper. (*Id.* at 19). Each of the suggested jobs existed in significant numbers in the regional and national economy. (*Id.*) That Rojas could perform available jobs provides sufficient evidence that "a reasonable mind might accept as adequate to support" ALJ Cohen's determination. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted). As such, ALJ Cohen's conclusion that Rojas was not entitled to SSI is supported by substantial evidence in the record.

## CONCLUSION

For the reasons stated herein, the Commissioner's motion for judgment on the pleadings (Doc. No. 16) is granted. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated: Brooklyn, New York  　　　*Roslynn R. Mauskopf*
　　　　March 8, 2017

　　　　　　　　　　　　　　　　　　　ROSLYNN R. MAUSKOPF
　　　　　　　　　　　　　　　　　　　United States District Judge